**FILED**

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

JAN 3 0 2008 *oauu*
JAN 30 2008
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

United States of America ex rel.

_Daniel Coleman N84660_
(Full name and prison number)
(Include name under which convicted)

PETITIONER

vs.

_Donald A. Hulick Warden_
(Warden, Superintendent, or authorized
person having custody of petitioner)

RESPONDENT, and

**(Fill in the following blank only if judgment**
**attacked imposes a sentence to commence**
**in the future)**

ATTORNEY GENERAL OF THE STATE OF

_____
(State where judgment entered)

)
)
)
)
)
)
)  CASE
)  NO:_____
            (Supplied by Clerk of this Court)
)
)
)
)
)
)  **08CV660**
)  **JUDGE SHADUR**
)  **MAGISTRATE JUDGE COLE**
)
)
)
)  Case Number of State Court Conviction:
)  _97 CR 9541 01_
)

**PETITION FOR WRIT OF HABEAS CORPUS – PERSON IN STATE CUSTODY**

1. Name and location of court where conviction entered: _Circuit Court of Cook County_
_Criminal Division 2650 South California 60608_

2. Date of judgment of conviction: _July 20, 1999 – see pg. 25_

3. Offense(s) of which petitioner was convicted (list all counts with indictment numbers, if known)
_First Degree Murder – Indictment No. 97 CR 9541 01 - See pg. 19 thru 24._

4. Sentence(s) imposed: _Natural Life_

5. What was your plea? (Check one)   (A) Not guilty   ( **X** )
                                     (B) Guilty       (   )
                                     (C) Nolo contendere ( )

If you pleaded guilty to one count or indictment and not guilty to another count or indictment, give details:

_____

Revised: 7/20/05

_1._

## PART I – TRIAL AND DIRECT REVIEW

1. Kind of trial: (Check one):    Jury (**X**)      Judge only ( )

2. Did you testify at trial?    YES ( )      NO (**X**)

3. Did you appeal from the conviction or the sentence imposed? YES (**X**) NO ( )

     (A) If you appealed, give the

         (1) Name of court: *Appellate Court 1st dist. First division*

         (2) Result: *Conviction affirm /Sentence Vacated*

         (3) Date of ruling: *March 11, 2002*

         (4) Issues raised: *(1) Testimony and Written Evidence that deceased wanted a divorce Deined defendant a fair Trial, Where there was No Showing that defendant was present during any of the out-of-Court (Cont. pg. 3)*

     (B) If you did not appeal, explain briefly why not:

4. Did you appeal, or seek leave to appeal, to the highest state court? YES (**X**)      NO ( )

     (A) If yes, give the

         (1) Result: *Denied leave To Appeal*

         (2) Date of ruling: *Around Oct. 6, 2004*

         (3) Issues raised: *The Natural Life that was re affirmed*

     (B) If no, why not:

5. Did you petition the United States Supreme Court for a writ of *certiorari*? Yes ( ) No (**X**)

     If yes, give (A) date of petition: _____ (B) date *certiorari* was denied: _____

     Revised: 7/20/05

PAge #2 Continue of PArt1.

(4) Issuses raised: Conversation with the deceased or otherwise knew of Plan.

2. Defendant was denied Due Process, when the Court barred Counsel from Cross-examining the Prosecutor, who took defendant Custodial Statement about Questions She did not ask him Concerning the events for which he was on trial.

3. Defendant was denied a fair trial by the trial Courts failure to instruct the Jury Sua-Sponte on the lesser mitigated offense or Second degree murder and to explain adequately to defendant the basis of that instruction.

4. Defendant Natural Life Sentence must be Vacated because the Sentence Statute Authorizes an enhanced Sentence without the Constitutionally required Proof beyond a reasonable doubt and without Submission of the Aggravating factor for the Jury.

## PART II – COLLATERAL PROCEEDINGS

1. With respect to this conviction or sentence, have you filed a post-conviction petition in state court?

   YES (X)    NO ( )

   With respect to *each* post-conviction petition give the following information (use additional sheets if necessary):

   A. Name of court: Circuit Court of Cook County Criminal Division

   B. Date of filing: March 16, 2005

   C. Issues raised: Claim (1) Ineffectiveness of Trial Counsel; Claim (2) Whether petitioner was prejudiced by Appellate Attorney Representation petitioner is en-titled as a matter of right to effective assistance of Appellate Attorney <span>Cont. pg. 5 + 6.</span>

   D. Did you receive an evidentiary hearing on your petition?       YES ( )    NO (X)

   E. What was the court's ruling? barred via res judicata  Cont. pg. 6.

   F. Date of court's ruling: June 22, 2007

   G. Did you appeal from the ruling on your petition?        YES (X)    NO ( )

   H. (a)   If yes, (1) what was the result? Rule 367 rehearing denied – Cont. pg. 6 and 7.

           (2) date of decision: July 19 2007 See. pg. 60

   (b)   If no, explain briefly why not: _____

1. Did you appeal, or <u>seek leave</u> to appeal this decision to the highest state court?

   YES (X)    NO ( )

   (a)   If yes, (1) what was the result? Supreme Court denied

           (2) date of decision: November 29, 2007

   (b)   If no, explain briefly why not: _____

Revised: 7/20/05

4

*Page 3 Continue of PART II.*

\*(C) Issues raised: Claim 3.    Whether false declaration occured before the Grand Jury; wherein Testimony was Presented to the Grand Jury implementing Petitioner, accuser testimony was altered at trial Proceedings both materially and Substantially by Post-indictment testimony. Therefore does said facts render the indictment and Judgment entered thereunder Void? 5th Amendment; Ill. Const. Art. 1 sec. 7.

Claim 4 and 5. Whether Petitioner Constitutional Right was abrogated to Confront his accuser U.S.C. 6th amendt; Ill. Const. Art. 1 sec. 8.

Claim 6. NO Issue Raised on the Sufficiency of Indictment whether Nol-Prossed in the matter of Substance is void, By NOT Resubmission to the Grand Jury, whether Trial Court Proceeded at trial via an Nugatory Indictment.

Claim 7. Whether Petitioner 5th Amendment, Ill. Const. Art. 1 sec. 10 were violated being Subject for the Same offense to be twice Put in Jeopardy 5th and 14th Amendment.

Claim 8. Whether this Change in Substantive Law automatically involves other Substantive issues.

Claim 9. Double Jeopardy Clause U.S.C. 5th Amendt, Ill. Const. Art. 1 sec. 10, Standard of review is de novo.

5.

Page 3 continue or Part #1.

Claim 10. The Res Judicata, waiver Cause and Prejudices Fundamental Fairness Doctrines

Claim 11. The Harmless Error Doctrine.

Claim 12. Statement of Facts.

Claim 13. Whether the Circuit Court abused It's Discretion Producing a True Miscarriage of Justice, Violating Petitioner Constitutional Right(s) 5, 6, 14, Amendments, Ill. Const. Art. 1 sec. 2; 1 sec. 13; 1 sec. 8; of the Code (185 Ill. 2d 114) of Criminal Procedure of 1963

Claim 14. Whether this indictment or information must be dismissed as a matter of Law, after a Plea has been entered the Court may dismiss the indictment upon any of the following grounds ——— Petitioner has NOT been Placed on Trial in Compliance within Section 725 ILCS 5/103-5 (A) Statute

*E. What was the Courts ruling? Trial Court Summarily dismissed Petitioner's Post Conviction Petition and Habeas Corpus Petition after finding that the Claim in both were barred by the doctrines of res Judicata or waiver as well as frivolous and without merit.

*H. (A) IF yes, (1) what was the result? Dismissed defendant's Pro-Se Post Conviction Petition because he failed to attach supporting documentation or an explanation for its absence, a fact

6.

* H.(A)<sup>(1)</sup> Which alone Justified dismissal.

(2) Date of Decision: June 22, 2007-File Petition For Rehearing on July 13, 2007, rehearing Denied on July 19, 2007.

2. With respect to this conviction or sentence, have you filed a petition in a **state court** using any other form of post-conviction procedure, such as *coram nobis* or habeas corpus?    YES (X)          NO ( )

   A. If yes, give the following information with respect to each proceeding (use separate sheets if necessary):

   1.   Nature of proceeding          *Separate Sheet Cont. pg. 9.*

   2.   Date petition filed          _____

   3.   Ruling on the petition          _____

   4.   Date of ruling          _____

   5.   If you appealed, what was
        the ruling on appeal?          _____

   6.   Date of ruling on appeal          _____

   7.   If there was a further appeal,
        what was the ruling ?          *NO*_____

   8.   Date of ruling on appeal          _____

3. With respect to this conviction or sentence, have you filed a previous petition for habeas corpus in **federal court**?    YES ( )   NO (X)

   A. If yes, give name of court, case title and case number: _____

   _____

   B. Did the court rule on your petition? If so, state

   (1) Ruling: _____

   (2)   Date: _____

4. With respect to this conviction or sentence, are there legal proceedings pending in any court, other than this petition?    YES (X)    NO ( )

   If yes, explain: *Around July 19, 2006, Petitioner file a 735 ILCS 5/2-1401 (F) and ● (e). Around August 24, 2006 petitioner was writ into Court, around August 24, 2006 2-1401 (F) petition denied. Petitioner Appeal around August 24, 2006. Around Sept 12, 2007 Appeal Attorney Frederick Weil File a Finley motion. Petitioner around Oct. 23, 2007 file An objection Motion to Attorney Finley motion*

Revised: 7/20/05

*8.*

*Page #4 Continue of Part II*

*A. Yes, give the following information with respect to each Proceeding (Use (ing) Separate Sheet)

1. Nature of Proceeding: Around June 25, 2003, File Habeas Corpus relief in Randolph County Illinois: Daniel Coleman V. Eugene McAdory warden - Case no. 03-MR 38.

2. Denied - August 6, 2003.

3. Yes, Appealed: File May 3, 2004, Late Notice of Appeal.

4. On or about May 14, 2004, the Appellate Court Fifth Judicial district — Denied Petitioner Late Notice of Appeal; Daniel Coleman V. Eugene McAdory warden Case no. 5-04-0282.

**PART III – PETITIONER'S CLAIMS**

1. State <u>briefly</u> every ground on which you claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground. You may attach additional pages stating additional grounds and supporting facts. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds later.

**BEFORE PROCEEDING IN THE FEDERAL COURT, YOU MUST ORDINARILY FIRST EXHAUST YOUR STATE COURT REMEDIES WITH RESPECT TO EACH GROUND FOR RELIEF ASSERTED.**

(A) Ground one *Constitutional Violation 5th Amendment  NO Resubmission*
Supporting facts (tell your story <u>briefly</u> without citing cases or law):

No resubmission To the Grand Jury that issued 97 CR 9541 True Bill OF Indictment, Rendering Conviction void ab initio.

Petitioner on February 27, 1997, was indicted by the Grand Jury for 3 Count's of First degree murder and 2 Count's of Home Invasion, After the State Nol-Prossed one Count of murder 9-1(A)(3) Forcible Felony and Two Count's of Home Invasion 12-11-(A)(1) and 12-11-(A)(2) of Section 5 act 720 petitioner was Convicted and Sentence of the Two
(Cont. pg. 11)

(B) Ground two *Constitutional Violation 5th Amend't, Fail to Alleged ALL Essential Elements*
Supporting facts:

▬▬▬ However, Challenged after the Verdict Failure of the indictment to Alleged ALL the Essential elements of an offense is A Jurisdictional defect requiring dismissal of 97 CR 9541 indictment

Petitioner was Indicted by the Grand Jury for First degree murder and home invasion (NO Burtal Nor Heinous) this element was NOT required via Indictment OF A Grand Jury. see, pg. 19 thru 24.

"Chiefly; that NO person (Mr. Coleman) Can be ▬▬ held to answer, without Presentment or indictment by a Grand Jury, for any Crime for which an infamous punishment may be Imposed by the Court. The question is whether the Crime is one for which the Statutes Authorize the court to award an infamous punishment, NOT whether the
(Cont. pg. 12.)

5                                    Revised: 7/20/05

### Page #6 Continued of Ground II Claims

**\*** (A) Ground one: remaining Count's of First degree Murder....

This Amendment (deleting) Indictment 97 CR 9541 the alteration of the Charging Term of AN Indictment in effect after the Grand Jury has made a decision on it to do Shall violate Mr. Coleman right to indictment by the Grand Jury. See exhibit(s) pg. 19 thru 24

When the indictment is filed with the Court NO Change(s) Can be made in the body of the Instrument by order of the Court or by the Prosecuting Attorney without a resubmission of the Case to the Grand Jury

Upon 97 CR 9541 indictment Changed without resubmission of this Case to the Grand Jury the Court Can Proceed No Further there is Nothing in the language of the Constitution which Petitioner Can be held to Answer.. A trial on such 97 CR 9541 indictment is void.

In light of the Rule that the guaranty of the indictment by a Grand Jury implies that an indictment may Not BE Amend.

A mere inspection of the Charging instrument 97 CR 9541 and 1st Page of Appellate Court 1st district 1st Division Proof of Nol-Prossed in support of this Claim the Circuit Court has exceed its lawful Jurisdiction rendering Conviction and Sentence void.., where there is a want of Authority / Jurisdiction over the Subject matter the Judgment is open to Successful impeachment, if Such Fact is made to Appear from the Face of the record or by matter(s) dehors. See exhibit(s) pg. 19 thru 24 and 27 thru 47

The Power of the Court to Proceed to try Petitioner is as much arrested as if the Indictment has been dismissed or a Nolle Prosequi as in this Case been entered.

*Page 6 Continue of Part IV Claims*

*(B) Ground two: Punishment ultimately awarded is an infamous one.*

When Mr. Coleman accused is being subjected to an infamous Punishment if Convicted, Petitioner has the right to insist that he shall NOT be put upon this (No Charge via Grand Jury), except on the accusation of a Grand Jury..., This Conviction is based upon an indictment which failed to allege an essential element violating Petitioner 5th Amendment right to be tried upon Charges found by the Grand Jury.

(C) Ground three _Speedy Trial Violation Constitutional 6th and Statutory_
Supporting facts:

Petitioner the accused is entitled to a Speedy trial in ALL Criminal prosecution, Petitioner became the accused the moment the Grand Jury returned their True Bill 97 CR 9541 to the trial Court. Petitioner expected that he would be tried for the offense(s) Charged by the Grand Jury; He was NOT.

Petitioner had an expectancy to be Sentenced based on the Jury's verdict; He was NOT. * Cont. pg. 14 and 15.

(D) Ground four _Stipulation to D.N.A, latent prints, Pubic hair are INvalid._
Supporting facts:

Trial Attorney Charles Buchholz Fraudulant Concealed exculpatory D.N.A, latent prints, Pubic hair evidance by his stipulating to elemental facts, Waiving petitioner Constitutional Right to a Jury Trial on these elements; See, pg. 66 thru 76, F-140 thru F-150 which denied petitioner a Fair trial, D.N.A., latent prints, Pubic —
* Cont. pg. 15 thru 17.

---

2. Have all grounds raised in this petition been presented to the highest court having jurisdiction?

    YES (X)   NO ( )

3. If you answered **"NO"** to question (2), state briefly what grounds were not so presented and why not:

_____

_____

6

Revised: 7/20/05

## Page 6 Continue of Part III Claims

**\*** (C) Ground three : The Circuit Court exceeded it's lawful Jurisdiction as been inserted in Claim 1 and 2, after deleting, termining Counts of the True Bill 97 CR 9541 — No Resubmission to the Grand Jury rendering Conviction void..., Further the Trial Court Convicted and Sentence Petitioner NOT by Law to an uncharged ▪ infamous Crime element NOT required by Indictment of a Grand Jury; See exhibit; Proceeding(s) pg. 29-lines 1-12.

   Petitioner Trial has taken from April 11, 1997 to the Present date and no Final Judgment has been entered which Finalize this Prosecution. Petitioner has Yet to be Sentence, or the trial finalized Pursuant to State and Federal Law.

   There is NO dispute that a Sentence is the Final Judgment in a Criminal Case, and an Appeal Technically Cannot be inter-tain absent the imposition of a Sentence ; Appeal from Final Judgment; Since as a matter of Law the Appellate Court Lack Jurisdiction to review a VOID Judgment; NO Sentence as to the Jury Verdict been render by Trial Court.

   No res Judicata or Waiver Apply, Appellate Court Lack Jurisdiction to review; See pg. 29-lines 7 thr 12 and pg. 30.

   The Practice of Amending, deleting on the Court's own Motion — No Resubmission to the Grand Jury 97 CR 9541 indictment is VOID; Further the instant the Circuit Court usurped the Province of the Grand Jury, by going beyond the Jury Verdict

14.

## Page 6 Continue of Part III Claims

\* (C) Ground three; Circuit Court lost Subject Matter Jurisdiction — No Appeal Could be taken From a Judgment that is not Final or Void.., Petitioner Right to A Speedy Trial been Abrogated.

Chiefly, most importantly the Supremacy Clause of the United States Constitution Provides that this Constitution, and the Laws of the United States..., Shall be the Supreme Law of the Land... —any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. United State Constitution Art VI, Cl. 2. Thus, a State Law is without effect if it Conflicts With a Federal Law as in this Case before the Honorable Justices.

State Court(s) have an obligation to enforce and Protect every right granted by the Constitution of the United States Whenever those rights are involved in a Civil or Criminal Proceed-ing before them. Petitioner Right(s) guaranteed by the Due Process Clause of the fourteenth Amendment, the Constitutional right to Due Process of Law must Prevail; U.S.C. 14th sec. 1.

\* (D) Ground Four; hair(s) Such evidence is relevent and admissible only if a Close Connection Can be demonstrated be-tween Someone else and the Commission of the offense.

A Stipulation to a Fact at Trial Acts as a Waiver of the right to a Trial by Petit Jury on the Stipulation issue.

## Page 6 Continue of Part III Claim

*(D) Most importantly as previously raised in Claim(s) 1 and 2; 5th Amendment U.S.C. Violation terminating, deleting, Nolle Prosequi Count(s) in substance — No Resubmission to the Grand Jury VOID Indictment rendering Conviction void Ab initio; Also Trial Court exceeding its lawful Jurisdiction, therefore, Trial Attorney Charles Buchholz Stipulation is NOT Valid — Waiver on Stipulation as to D.N.A., does NOT APPLY

   Trial Attorney Mr. Charles Buchholz ineffectiveness of of Counsel violating Petitioner 5th, 6th U.S.C. right., See, exhibits, pg. 20-25 indictment; and, A-1 thru A-21 pg. 32 thru 48, report of Proceeding; Counsel performance was so deficient as to be objectly unreasonable and there exist(s) a reasonable probability that for the error of Counsel, the result of the Proceedings would have been different.

   Petitioner has a Constitutional right to effectiveness assistance of Appeal Attorney; Attorney Michelle Kalisiak was Post Conviction and State Habeas Corpus Attorney on appeal., See, pg. 48 thru 55 Habeas Corpus record of Proceedings.

   Appeal Attorney Michelle Kalisiak performance was deficient as well as Cunning; Circumventing Petitioner Post Conviction Petition Viewing record of Proceeding (A-1 thru A-21 pg. 32 thru 48) Compare Appellate Court Order, pg. (57 thru 60) Court order which does NOT Acknowledge All of the Constitutional violation 5th 6th 14 sec. 1 that were meritoriously raised within Petitioner Post Conviction and

## Page 6 Continue of Part III Claim

* (D). State Habeas Corpus Petition (s)..., therefore, Petitioner had to file for rehearing Supreme Court Rule 367 on July 13, 2007 to reserve those meritorious issue's raised by Petitioner that Attorney Michelle Kalisiak Sought to waive — Failure To Raise Sufficiency of Indictment, Lack of SubJect-Matter Jurisdiction rendering Conviction void, Failure to raise Double Jeopardy Violation, Harmless Error Doctrine, and the Res Judicata and waiver Cause and PreJudies Fundamental Fairness Doctrine.

The Circuit Court of Cook County Rule that Petitioner PostConviction and Habeas Corpus Petition (s) were barred by Res Judicata and waiver, frivolous without merit..., Chiefly the Circuit Court exceeded it(s) lawful SubJect-Matter Jurisdiction rendering Conviction void - lack of SubJect matter Jurisdiction whereas Appellate Court lack Jurisdiction <u>No Final</u> Judgment; thus, Res Judicata Nor Waiver Apply. Petitioner Claim is meritorious.

Petitioner Pray that this United State District Court grant Petitioner immediate Released — the Circuit Court of Cook County Did NOT have Jurisdiction To Order Petitioner incarceration as Petitioner is Presently incarcerated

## PART IV – REPRESENTATION

Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(A) At preliminary hearing _____No one_____

(B) At arraignment and plea _____

(C) At trial _____Charles S Buchholz 2650 S. California._____

(D) At sentencing _____Charles S. Buchholz 2650 S. California._____

(E) On appeal _____Alison Edwards_____

(F) In any post-conviction proceeding _____postconviction and Habeas Michelle Kalisiak Appeal Attorney_____

(G) Other (state): _____

## PART V – FUTURE SENTENCE

Do you have any future sentence to serve following the sentence imposed by this conviction?

YES ( )   NO (X)

Name and location of the court which imposed the sentence: _____

Date and length of sentence to be served in the future _____

WHEREFORE, petitioner prays that the court grant petitioner all relief to which he may be entitled in this proceeding.

Signed on: _____January 28, 2008_____   _____Daniel Coleman pro se_____
(Date)                                    Signature of attorney (if any)

**I declare under penalty of perjury that the foregoing is true and correct.**

_____Daniel Coleman_____
(Signature of petitioner)

_____N-84660_____
(I.D. Number)

_____P.O. Box 711 Menard Ill. 62259_____
(Address)

Revised: 7/20/05

In The United States District Court
For The ___Northern___ District OF Illinois

Daniel Coleman
        Plaintiff

    -V-

Donald A. Hulick-Warden
 Lisa Madigan-Attorney General
            Defendant(s)

Case NO. 97 CR 9541

The Honorable Judge
Lawrence Fox
    Presiding

Document(s) In Support OF This Claim
Petition For Writ OF Habeas Corpus...
Petitioner in State Custody

### Table OF Content(s)                    Pages

Additional Questionnaire answer sheet(s) are Attached—1 thru 18

Full Indictment Six Page(s) _____  19 thru 24.

Order OF Sentence and Commitment Sheet _____ 25.

Appellate Court OF Ill. 1st Dist. 1st Div.—State Nol-Prossed—— 26.

1-05-2681 Report OF Proceeding A-1 thru A-21 _____ 27 thru 47.

Report OF Proceeding State Habeas Corpus B-1 thru C-4____ 48 thru 55.

1-05-2681 Appeal order _____ 56 thru 59.

Rehearing Order Denied _____ 60.

In Forma Pauperis Application and Financial Affidavit——61-65.

D.N.A. Stipulation F-140 thru F-150 _____ 66 thru 76.

Recall Original Mandate _____ 77.

Motion To Dismissed Order _____ 78.

II.

G.J. No.   326
GENERAL NO. 97 CR- 9541

----------------------------------

CIRCUIT COURT OF COOK COUNTY
    COUNTY DEPARTMENT
    CRIMINAL DIVISION
      March, 1997
----------------------------------

The People of the State of
            Illinois
              v.
       Daniel Coleman

****************
* INDICTMENT FOR *
****************

FIRST DEGREE MURDER, ETC
----------------------------------

A TRUE BILL

*Marion Williams*

----------------------
Foreman of the Grand Jury

=========================
      WITNESSES
DET. TERRENCE O'CONNOR

=========================
Filed _____ 19__, Clerk
Bail $_____

PAGE ___1___ OF ___6___ PAGES

19.

**************************************************************

**STATE OF ILLINOIS )**

................................**) SS.**

**COUNTY OF COOK      )**

#### The MARCH, 1997 Grand Jury of the Circuit Court of Cook County.

The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present that on or about  FEBRUARY  27, 1997 at and within the County of Cook

### DANIEL COLEMAN

committed the offense of      **FIRST DEGREE MURDER**

in that HE, **WITHOUT LAWFUL JUSTIFICATION INTENTIONALLY OR**

.............**KNOWINGLY STABBED, CUT, BEAT AND KILLED**

.............**MARCHELLE COLEMAN WITH A KNIFE AND HANDS,**

.............**IN VIOLATION OF CHAPTER 720 ACT 5**

.............**SECTION 9-1(A)(1), OF THE ILLINOIS COMPILED STATUTES 1992,**

.............**AS AMENDED AND,**

contrary to the Statute and against the peace and dignity of the same People of the State of Illinois.

#### CHARGE ID CODE: 735000

20.

COUNT 02

The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present that on or about FEBRUARY 27, 1997 at and within the County of Cook

DANIEL COLEMAN

committed the offense of        FIRST DEGREE MURDER

in that HE, WITHOUT LAWFUL JUSTIFICATION

    STABBED, CUT, BEAT AND KILLED

    MARCHELLE COLEMAN WITH A KNIFE AND HANDS,

    KNOWING THAT SUCH STABBING, CUTTING, AND

    BEATING WITH A KNIFE AND HANDS CREATED A

    STRONG PROBABILITY OF DEATH OR GREAT

    BODILY HARM TO MARCHELLE COLEMAN,

    IN VIOLATION OF CHAPTER 720 ACT 5

    SECTION 9-1(A)(2), OF THE ILLINOIS COMPILED STATUTES 1992,

    AS AMENDED AND,

contrary to the Statute and against the peace and dignity of the same People of the State of Illinois.

CHARGE ID CODE: 735100

00000.9.0172

9.

## COUNT 03

The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present that on or about  FEBRUARY   27, 1997 at and within the County of Cook

DANIEL COLEMAN

committed the offense of       FIRST DEGREE MURDER

in that HE, WITHOUT LAWFUL JUSTIFICATION STABBED, CUT, BEAT

AND KILLED MARCHELLE COLEMAN WITH A KNIFE AND HANDS

DURING THE COMMISSION OF A FORCIBLE FELONY, TO WIT:

HOME INVASION, IN VIOLATION OF CHAPTER 720 ACT 5

SECTION 9-1(A)(3), OF THE ILLINOIS COMPILED STATUTES

1992, AS AMENDED AND,

contrary to the Statute and against the peace and dignity of the same People of the State of Illinois.

CHARGE ID CODE: 735200

22.

COUNT 04

The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present that on or about  FEBRUARY  27, 1997 at and within the County of Cook

DANIEL COLEMAN

committed the offense of        HOME INVASION

in that HE, NOT BEING A PEACE OFFICER ACTING IN THE LINE

OF DUTY, WITHOUT AUTHORITY KNOWINGLY ENTERED THE

DWELLING PLACE OF  ANOTHER,  TO WIT: THE APARTMENT OF

MARCHELLE COLEMAN, LOCATED AT 1038 WEST

ROSEMONT, IN THE CITY OF CHICAGO, COOK COUNTY,

ILLINOIS, AND HE KNEW THAT ONE OR MORE

PERSONS WERE PRESENT THEREIN, AND WHILE

ARMED WITH A DANGEROUS WEAPON, TO WIT:

A KNIFE, USED FORCE UPON

MARCHELLE COLEMAN WITHIN SAID DWELLING

PLACE, IN VIOLATION OF CHAPTER 720 ACT 5

SECTION 12-11-(A)(1), OF THE ILLINOIS COMPILED STATUTES

1992, AS AMENDED AND,

contrary to the Statute and against the peace and dignity of the same People of the State of Illinois.

CHARGE ID CODE: 995100

23.

## COUNT 05

The Grand Jurors chosen, selected, and sworn, in and for the County of Cook, in the State of Illinois, in the name and by the authority of the People of the State of Illinois, upon their oaths present that on or about  FEBRUARY  27, 1997 at and within the County of Cook

DANIEL COLEMAN

committed the offense of        HOME INVASION

in that HE, NOT BEING A PEACE OFFICER ACTING IN THE LINE

OF DUTY, WITHOUT AUTHORITY KNOWINGLY ENTERED THE

DWELLING PLACE OF ANOTHER, TO WIT: THE APARTMENT OF

MARCHELLE COLEMAN, TO WIT: LOCATED AT 1038 WEST

ROSEMONT, IN THE CITY OF CHICAGO, COOK COUNTY,

ILLINOIS, AND HE KNEW THAT ONE OR MORE

PERSONS WERE PRESENT THEREIN, AND

INTENTIONALLY INJURED MARCHELLE COLEMAN

WITHIN SAID DWELLING PLACE, TO WIT: STABBED,

CUT, AND BEAT MARCHELLE COLEMAN WITH A KNIFE

AND HANDS KILLING HER, IN VIOLATION OF

CHAPTER 720 ACT 5 SECTION 12-11-(A)(2),

OF THE ILLINOIS COMPILED STATUTES 1992,

AS AMENDED AND,

contrary to the Statute and against the peace and dignity of the same People of the State of Illinois.

CHARGE ID CODE: 995200

00000 9 0125

9.

24.

(County) (Municipal) (Division) (District)

**People of the State of Illinois**

   v.

Daniel Coleman

**Defendant**

NO. __97 CR 09541 01__

I. R.# __445 456__

S. I. D. # _____

## ORDER OF SENTENCE AND COMMITMENT TO
## ILLINOIS DEPARTMENT OF CORRECTIONS

The defendant having been adjudged guilty of committing the offense(s) enumerated below,

IT IS ORDERED that the defendant __Daniel Coleman__ be and is hereby sentenced to the ILLINOIS DEPARTMENT OF CORRECTIONS AS FOLLOWS:

_Sentenced to Natural Life imprisonment to IDOC_

_- S.O.M 7/20/99_

|  |  | Statutory Citation |  |
|---|---|---|---|
| **Offense** _Murder_ | 720 | ILCS __5__ / __9-1(A)(1)__ |
| **Offense** | | ILCS __/__ |
| **Offense** | | ILCS __/__ |
| **Offense** | | ILCS __/__ |

IT IS FURTHER ORDERED that the Clerk of the Court shall deliver a copy of this order to the Sheriff of Cook County.

IT IS FURTHER ORDERED that the Sheriff of Cook County shall take the defendant into custody and deliver him/her to the Illinois Department of Corrections.

IT IS FURTHER ORDERED that the Illinois Department of Corrections shall take the defendant into custody and confine him/her in the manner provided by law until the above sentence is fulfilled.

**PREPARED BY** _Plummer E_

**DEPUTY CLERK**

**307**  __7-7-99__

**BRANCH COURT**  **DATE**

**JUDGE** ENTERED
MARISA C. FERRELL

MICHAEL F. SHEAHAN

JUL 07 1999

CLERK OF CIRCUIT COURT
CRIMINAL DIVISION

**JUDGE**

**JUDGE'S NO.**

AURELIA PUCINSKI, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

CCG-N305-3/11/97-150M(83420244)

25.

Citation/Title
767 N.E.2d 388, 328 Ill.App.3d 688, 262 Ill.Dec. 928, People v. Coleman,
(Ill.App. 1 Dist. 2002)

**\*388**  767 N.E.2d 388

328 Ill.App.3d 688, 262 Ill.Dec. 928

Appellate Court of Illinois,
First District, First Division.

The PEOPLE of the State of Illinois, Plaintiff-Appellee,

v.

Daniel COLEMAN, Defendant-Appellant.
No. 1-99-2714.
March 11, 2002.

    After the State nol-prossed the home invasion counts and one of the murder
counts, defendant was convicted in the Circuit Court of Cook County, Lawrence P.
Fox, J., of the two remaining counts of first degree murder, and he appealed.
The Appellate Court, Cohen, P.J., held that statute which allowed trial court to
sentence defendant to term of natural life imprisonment upon finding that the
murder was accompanied by exceptionally brutal or heinous behavior indicative of
wanton cruelty was unconstitutional pursuant to *Apprendi*, holding that any fact
that increases penalty for a crime beyond prescribed statutory maximum must be
submitted to jury and proved beyond a reasonable doubt, and thus, defendant's
natural life sentence could not stand.

    Affirmed in part and vacated in part; cause remanded.

West Headnotes

[1] Criminal Law ☜661
    110 ----
        110XX Trial
            110XX(C) Reception of Evidence
                110k661 Necessity and Scope of Proof.

    [See headnote text below]

[1] Criminal Law ☜1153(1)
    110 ----
        110XXIV Review
            110XXIV(N) Discretion of Lower Court
                110k1153 Reception of Evidence
        110k1153(1) In General.
    The admissibility of evidence is within the sound discretion of the trial
court, and its ruling will not be reversed unless there has been an abuse of that
discretion.

    Copyright (c) West Group 2003 No claim to original U.S. Govt. works



05-2681

1   STATE OF ILLINOIS  )
                        ) SS:
2   COUNTY OF C O O K  )

3           IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
              COUNTY DEPARTMENT-CRIMINAL DIVISION
4

    THE PEOPLE OF THE         )
5   STATE OF ILLINOIS,        )
                              )
6           Plaintiff,        )    NO. 97 CR 9541 (01)
                              )
7           vs.               )    Charge:  Murder
                              )
8   DANIEL COLEMAN,           )
                              )
9           Defendant.        )

10

11          REPORT OF THE PROCEEDINGS had at the

12  post-conviction of the above-entitled cause, before the

13  HONORABLE LAWRENCE P. FOX, Judge of said court, on the

14  13th day of June, A.D., 2005.

15

16

17

18

19

20

21

22  CAROLYN C. BROWN, CSR, RPR
    Official Court Reporter
23  Circuit Court of Cook County
    Criminal Division
24

                        A - 1

                        27.

1                          I N D E X

2

3

4    NAME:  CAROLYN C. BROWN

5

6

7

8    DATE:  JUNE 13, 2005

9

10

11

12   PAGES:  A - 1  through A - 21

13

14

15

16

17

18

19

20

21

22

23

24

A - 2

1          THE COURT:   This is Daniel Coleman.  Daniel
2    Coleman is this defendant's name.  And the Case No. is
3    97 09541.  And I'm going to come over here, but I need
4    to file it's a post-conviction and a habeas corpus both
5    per the court.  This is Daniel Coleman.  Case No. 97
6    09541.
7          After a jury found the defendant Daniel
8    Coleman guilty of the offense of murder in this case on
9    July 7, 1999, he was sentenced to a term of natural
10   life imprisonment based on the Court's finding that
11   offense was accompanied by exceptionally brutal and
12   heinous behavior indicative of wanton cruelty.
13         In his initial appeal the Appellate Court
14   affirmed his conviction, but vacated his natural life
15   sentence.  Thereafter, the Illinois Supreme Court
16   vacated the Appellate Court's opinion with directions
17   to the Appellate Court to reconsider its ruling
18   regarding the defendant's Apprendi versus New Jersey
19   contentions in light of the Supreme Court decisions in
20   People versus Crespo, C-r-e-s-p-o, 302 Ill. 2nd 335;
21   People versus Thurow, T-h-u-r-o-w, 203 Ill. 2nd 352;
22   People versus Swift 202 Ill. 2nd 378; and People versus
23   Kaczmarek, K-a-c-z-m-a-r-e-k, 207 Ill. 2nd 288.
24         The Appellate Court then in March of 2004

A - 3

1    affirmed both the defendant's conviction and his

2    natural life sentence considering the defendant's

3    Apprendi claims a second time and rejecting them

4    pursuant to the Supreme Court cases that I just cited

5    and the directions that the Appellate Court received

6    from the Supreme Court.

7         The defendant's 25 page petition for

8    post-conviction relief in this case was stamped filed

9    by the Clerk's office on March 16, 2005. In it he

10   presents 14 claims. Many of which amount to different

11   constitutional violations based on his being sentenced

12   to life imprisonment, based on factors that were not

13   presented to the jury, and proof beyond a reasonable

14   doubt.

15        Those, of course, are claims which are based

16   on Apprendi versus New Jersey, and they're the same

17   claims that he presented in his direct appeal to both

18   the Illinois Appellate Court and the Illinois Supreme

19   Court and, therefore, they are specifically barred by

20   res judicata in this post-conviction proceeding.

21        Furthermore, all of the claims he makes,

22   regardless of the application of either res judicata or

23   waiver, are frivolous and patently without merit and

24   subject to summary dismissal for those reasons.

1          Taking his claims in reverse order, and he

2     presented his claims in Roman numerals.  So claim XIV

3     would be claim 14 -- and I'm taking these in reverse

4     order, but I'm going to say 14, and I'm going to

5     request the Court Reporter to transcribe the number 14

6     in Roman numerals, if you will.

7          So taking his claims in reverse order, claim

8     XIV is that his right to a speedy trial was violated

9     because he was never sentenced for the offense that the

10    jury found him guilty of and, therefore, the trial and

11    judgment were never finalized by his being sentenced

12    for that offense.  So he claims he was not placed on

13    trial in accordance with the Speedy Trial Act, and is

14    therefore entitled to dismissal of all of the charges

15    against him.

16          Of course no case or any other authority for

17    those propositions is cited by the defendant, and the

18    fact is he was sentenced for the offense he was found

19    guilty of to life imprisonment which did, in fact,

20    finalize the prosecution of that offense and allowed

21    him to then go on and effect his appeal of his

22    conviction and that sentence.

23          The fact that he was sentenced to an extended

24    term sentence for that offense is not, and has never

A - 5

*31.*

1    been the basis of a speedy trial claim as to that

2    offense Claim XIII is a somewhat convoluted allegation

3    which states that this matter is now before the court

4    due to a finding that, I as the judge, entered an

5    unlawful finding which exceeded the scope of the jury

6    verdict in sentencing him to life imprisonment and that

7    the original indictment was voided when quote "It

8    exceeded" end quote, and his right to a speedy trial

9    has been abrogated having not be tried by a jury on

10    those issues.

11    Just another way of stating a speedy trial

12    claim as far as that's concerned, but with respect to

13    the speedy trial claim that he rephrases here, brutal

14    and heinous sentence enhancement factors are simply not

15    an offense to which the Speedy Trial Statute or speedy

16    trial rights attach.  But on the other hand, they have

17    no effect on the underlying conviction for the offense

18    to which they are applied.

19    Nor is the charging instrument in this case

20    somehow nullified by the fact that an enhanced sentence

21    is imposed for an offense for which the defendant is

22    convicted.

23    Finally, this case is not here from the

24    Appellate Court or due to any finding by a higher

A - 6

1    court, but on the other hand is here only based on the

2    defendant's filing a post-conviction petition, and then

3    subsequently a habeas corpus petition.

4              Claim XII is a due process Apprendi claim

5    that he had the right to notice and a jury trial on

6    facts other than a prior conviction that increase the

7    maximum penalty for the crime he was charged with.

8              Claim XI asserts that the harmless error

9    doctrine is not applicable where there was no jury

10   verdict on brutal and heinous factors and, therefore,

11   no object upon which harmless error scrutiny can

12   operate.  That's an interesting proposition, but one

13   which is totally inapposite to the holdings, the

14   specific holdings in the cases of People versus Crespo,

15   203 Ill. 2nd 335 and People versus Kaczmarek 207 Ill.

16   2nd 288.

17             Claim X talks about an unnamed, unspecified,

18   and uncited Illinois Supreme Court case saying that a

19   double jeopardy claim in a post-conviction proceeding

20   is not barred by waiver and res judicata, and that

21   fundamental fairness requires relaxation of those rules

22   on any double jeopardy claim, but even if those rules

23   must be relaxed, there can be no relief if there is

24   absolutely no substance or merit to a double jeopardy

A - 7

*33.*

1    claim. And here there is no merit to the defendant's

2    claim that by being sentenced to an extended term he

3    was twice placed in jeopardy for the offense of murder.

4            The case he refers to is unnamed and uncited,

5    because it simply doesn't exist. Nor does the unnamed,

6    unspecified, uncited case that he refers to in VIIII,

7    which supposedly says under the circumstances in this

8    case he cannot be convicted and sentenced for an

9    uncharged greater offense.

10           That simply didn't occur in this case anyway,

11   where the defendant was convicted and sentenced for

12   only the charged offense of murder.

13           Likewise, Claim VIII has no merit, wherein he

14   alleges the State had no authority and the Court no

15   jurisdiction in a prosecution for a greater offense not

16   charged in the indictment, because no prosecution for a

17   greater offense occurred, but only the prosecution for

18   the charged offense of murder.

19           In Claim No. VII, he first asserts the double

20   jeopardy claim, which he revisits in Claim X, but as

21   stated previously the double jeopardy clause simply

22   does not apply to enhance sentencing for an offense for

23   which the defendant is tried and convicted.

24

A - 8

*34.*

1          Regardless of how the defendant chooses to

2     phrase his claims in numbers VII through XIV, and

3     regardless of the discussion I've just issued of their

4     lack of merit, they are all claims based on Apprendi

5     versus New Jersey, which was the thrust of the

6     defendant's direct appeal in this case.

7          Under the cases of People versus Mahaffey,

8     M-a-h-a-f-f-e-y, 2000 LEXIS 1391, and People versus

9     Fare, 193 Ill. 2nd 256 in cases cited in those cases,

10    he cannot escape the application of res judicata by

11    simply rephrasing his claims or signing different ways

12    to phrase these Apprendi claims that he persists in

13    making in this post-conviction petition.

14          Claims VI, raises the issue of the

15    sufficiency of the indictment and whether the State had

16    the right to nolle pros certain counts of the

17    indictment and proceed to trial on others, or whether,

18    according to the defendant, that amounts to proceeding

19    to trial on a quote, nugatory n-u-g-a-t-o-r-y, end

20    quote, indictment, or for that matter whether this

21    somehow amounts to amendment of the indictment which

22    would require the State to re-indict the defendant on

23    only the counts the State intends to proceed to trial

24    on.

1       Voluntarily dismissal of certain charges and

2   proceeding to trial on others has absolutely no effect

3   on the validity of an indictment, nor does this amount

4   to amendment of the indictment requiring the State to

5   re-indict.  Dropping charges is simply not the same

6   thing as amending them.

7       Claim V, alleges a violation of the

8   Sixth Amendment Confrontation Clause, as does Claim IV.

9       In Claim V, the defendant argues that because

10  he wasn't present for any of the out-of-court

11  conversations in which the victim made statements to

12  others about wanting a divorce, and because he had

13  never seen the "to-do-lists" -- to-do should be in

14  parenthesis, or it should be in quotation marks, which

15  included the notation, again in quotation marks, get

16  divorced, and that list was actually offered into

17  evidence against him at trial, he claims that because

18  he had never seen that list it was for some reason not

19  admissible against him.

20      His presence during a conversation or his

21  observation of a piece of paper prior to his arrest has

22  absolutely no bearing on the admissibility of that

23  evidence, which is later offered against him at trial.

24      Non-hearsay statements or statements within a

A - 10

1    hearsay exception not made inadmissible because the

2    defendant was not present at the time those statements

3    were made, nor is evidence that he didn't happen to see

4    prior to his arrest somehow inadmissible because he

5    didn't see it.  That doesn't make it inadmissible.

6        He has the right or his lawyer has the right

7    to see evidence that is going to be offered against

8    him, but the fact that he never saw that before he was

9    arrested has no bearing on its admissibility.

10       Furthermore, this issue was raised in his

11   appeal and, therefore, is barred in this proceeding by

12   res judicata, regardless of his attempt to rephrase

13   this claim; like he does with all of his Apprendi

14   claims.

15       Challenging this evidence now as a

16   confrontation violation, as opposed to the way that he

17   challenged it in his appeal as slimly claiming that it

18   was admissible hearsay, does not avoid the application

19   of the Res Judicata Doctrine.

20       In Claim III, the defendant claims the

21   testimony of Detective Terry O'Connor before the Grand

22   Jury on March 24, 1997, with his again convoluted

23   interpretation of O'Connor's trial testimony, which he

24   attaches to his petition by way of a transcript, which

A - 11

*37.*

1    he's basically destroyed by crossing out selected

2    words, phrases, questions and answers, and inserting

3    his own notes and comments instead.

4            An example of how farfetched this claim is,

5    is where he claims at the Grand Jury, Detective

6    O'Connor stated his first name was Terry, and then at

7    trial the defendant claims he perjured himself when he

8    said Terry, and then he said, well, it's actually

9    Terrence. That kind of claim is a good example of the

10   substantive merit of this entire post-conviction

11   petition where he's, he's seriously claiming that

12   Detective O'Connor perjured himself by saying his name

13   is Terry and then saying his actual name is Terrence.

14   As if that is perjury. Terry is obviously a shortened

15   version of Terrence that is as far from something that

16   amounts to perjury as you can possibly get.

17           The rest of this claim that compares

18   O'Connor's Grand Jury testimony to his trial testimony

19   is comparing his testimony at the Grand Jury where he

20   responds to questions about what his investigation of

21   the victim Marchelle, M-a-r-c-h-e-l-l-e, Coleman's

22   testimony -- I'm sorry. Strike testimony. The rest of

23   his claim compares O'Connor's Grand Jury testimony

24   where he responds to questions about what his

A - 12

1    investigation of Marchelle Coleman's homicide or death

2    showed, in terms of what information was garnered from

3    different sources during the course of his

4    investigation.  And he compares that with his testimony

5    at trial that refers to specific times and places that

6    are completely different, or specific as opposed to

7    general questions about what the investigation

8    revealed, or what the investigation showed.

9          So in other words, O'Connor testifies at the

10   Grand Jury about the defendant being present and armed

11   with a knife and stabbing and cutting and beating the

12   victim, and says that that's all based on interviews

13   that he has with other witnesses, the defendant, and

14   actually viewing the scene of the crime, and that's

15   kind of a summary of what his investigation in the case

16   revealed.

17         The defendant then compares that to testimony

18   he gave at trial about, specifically about his initial

19   conversation with the defendant when he first had

20   contact had with him in the alley at 7500 North Ridge,

21   and then his conversation with him thereafter at Area

22   3.

23         Not only is there absolutely no showing of

24   any false statement by Detective O'Connor, the

A - 13

1    defendant's attempt to compare his testimony at trial

2    and the testimony he gave before the Grand Jury,

3    completely fails because he's asked completely

4    different questions relating to different times and

5    places and aspects of his investigation that are not

6    the same subject matter.

7         Claim No. II, is a claim of ineffective

8    assistance of appellate counsel for failing to raise

9    trial counsel's ineffectiveness, which is set out in

10   Claim I, and will be discussed next, but, specifically,

11   in Claim II, the defendant raises appellate counsel's

12   failure to raise the sufficiency of the indictment, his

13   speedy trial, and double jeopardy claims that he

14   attempts to raise in this petition which, as I

15   previously indicated, are based on the Apprendi claim

16   that he raised on appeal and barred by res judicata

17   here, but because Counsel did raise the Apprendi issue

18   on appeal, these more specific claims that the

19   defendant is making here fall under the Apprendi claim

20   that he did raise, in that, his lawyer did raise and

21   was heard by the Appellate Court and the Supreme Court

22   in which those courts were free to consider.

23        Specifically, his double jeopardy or speedy

24   trial claims in an Apprendi context as a basis for

A - 14

40.

1    relief, but regardless of that, there's absolutely no

2    legal authority for any of these claims anyway which

3    makes them frivolous and patently without merit, as is

4    the sufficiency of the indictment claim he again makes

5    here, which was previously discussed in connection with

6    Claim No. VI.

7           As far as trial counsel's ineffectiveness in

8    Claim I, for all the reasons that I've already stated

9    in this opinion with respect to the sufficiency of the

10   indictment, double jeopardy, speedy trial and the

11   perjury by Detective O'Connor, those claims have no

12   merit and in no way state the gist of the claim of

13   ineffective assistance.

14          He also complains about counsel's failure to

15   challenge the fingerprint evidence quote "none of which

16   was his," end quote.  He doesn't say how he would

17   suggest counsel challenge lack of fingerprint evidence

18   inculpated him, but other than by objecting to the

19   testimony that wasn't his, which makes no sense, I'm

20   not sure what counsel could have done and didn't do.

21   And the fact remains that failure to object to

22   non-incriminating evidence is not ineffective

23   assistance under any circumstances.

24          Failure to retain a medical expert to explain

A - 15

1    a diabetic reaction to rebut his confession without any

2    affidavit from a potential witness or, for that matter,

3    from the defendant himself, does not state a claim of

4    ineffective assistance.

5         Likewise, a general claim of failure to

6    secure unnamed witnesses who have not submitted

7    affidavits to testify in his behalf, is not a

8    cognizable claim.

9         He claims that counsel failed to object to

10    his natural life sentence, but that sentence was what

11    got this case to the Illinois Supreme Court.  So,

12    obviously, somehow that issue was preserved for appeal.

13         And finally, he complains about counsel's

14    failure to advise him of his right to seek a

15    preliminary hearing and waive a Grand Jury hearing.

16    Suggesting that he has a Constitutional Right to

17    number 1, have a preliminary hearing, and No. 2,

18    prevent the State from presenting the case to the Grand

19    Jury, neither of which is true or has any legal basis,

20    whatsoever.

21         The State has the right to seek an indictment

22    from the Grand Jury whether there's a preliminary

23    hearing or not, and the defendant has no constitutional

24    right to a preliminary hearing.  The law is clear as to

A - 16

42.

1    both of those legal principles.  The defendant cites no

2    authority to the contrary as to either one of them.

3            Therefore, counsel could not have been

4    ineffective for not advising him of those totally

5    non-existent rights that he claims that he had.

6            Try as the defendant does to rephrase his

7    Apprendi claims, the Apprendi matter has been decided

8    in this case by both the Appellate Court and Supreme

9    Court.

10           The other non Apprendi claims that he makes

11   are so lacking in merit and patently frivolous, that it

12   has been difficult to comprehend the thrust of what

13   he's trying to say and comment on them as much as I

14   have.

15           At any rate his petition for post-conviction

16   relief is completely and totally and utterly without

17   any merit.  It's patently frivolous, and it will be

18   dismissed at this time.

19           And before I direct the Court Reporter to

20   prepare a transcript, as my written order, I am going

21   to go one step further at this point and discuss the

22   habeas corpus petition that the defendant has also

23   filed, in the meantime, which is stamped filed by the

24   Clerk's office on May 9, 2005.

A - 17

43.

1          And in his habeas corpus petition the

2    defendant alleges all of the same Apprendi related

3    constitutional violations that he includes in his

4    post-conviction petition, but he alleges them under the

5    general allegation that the Court exceeded the limit of

6    its jurisdiction by considering the brutal and heinous

7    enhancement factors which were neither charged nor

8    submitted to the jury.

9          He also claims that because there was no

10   showing he was present during out-of-court statements

11   with the deceased which came in against him at trial,

12   somehow that entitles him to habeas corpus relief.

13   Those statements were admissible hearsay for the

14   reasons stated at trial and affirmed by the Appellate

15   Court, and that issue is subject to res judicata in a

16   habeas petition, just like it is in his post-conviction

17   petition, and not under any conceivable theory the

18   basis of a lack of jurisdiction claim.

19          His Apprendi claims are likewise barred by

20   res judicata for the same reasons stated in his

21   post-conviction petition and, nevertheless, are not the

22   basis of a claim of a lack of jurisdiction over either

23   his person or the underlying murder prosecution in this

24   case.

A - 18

44.

1          His claim pertaining to the restriction of
2    cross-examination of the assistant state's attorney who
3    testified to a statement is subject to waiver, as is
4    his claim regarding the court's failure to sus sponte
5    instruct the jury on second-degree murder, since both
6    of those issues could have been raised on appeal, but
7    more importantly, he fails to specify questions that he
8    was not allowed to ask on cross-examination or areas
9    that he was prevented from pursuing on
10   cross-examination with respect to that claim, and he
11   alleges absolutely no basis or evidence, whatsoever,
12   which would have warranted a second-degree murder
13   instruction.  But, again, regardless of any of those
14   matters, those are not claims that even relate to a
15   lack of jurisdiction of either his person or the
16   subject matter of the prosecution in this case, and are
17   not cognizable in a habeas corpus petition for that
18   reason either.
19          So for all of those reasons this habeas
20   corpus petition that he's filed on May 9th, is also
21   denied.  And I would direct the Court Reporter to
22   prepare a transcript with two copies, so that would be
23   three all together, an original and two copies, and one
24   of those copies will be mailed to the defendant by

1    certified mail at Register No. N 84660, Post Office Box

2    711, Menard, Ill. 62259.

3            And I'm going to continue this case until

4    Monday, June 20th, so that I can file that transcript

5    as my written order ruling on both his post-conviction

6    petition and his habeas corpus petition.

7            Thank you very much.

8            (The above-entitled cause was continued to

9              June 20, 2005.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1    STATE OF ILLINOIS  )

2                       ) SS:

3    COUNTY OF C O O K )

4

5

6

7              I, CAROLYN C. BROWN, Official Court Reporter

8    of the Circuit Court of Cook County, County Department,

9    Criminal Division, do hereby certify that I reported in

10   shorthand the proceedings had at the hearing of the

11   above-entitled cause, and that the foregoing is a true

12   and correct transcript of the proceedings had.

13

14

15

16   _____

17   CAROLYN C. BROWN

     Official Court Reporter

18   CSR NO. 084-003848

19   Circuit Court of Cook County

20   County Department

21   Criminal Division

22

23   Dated this 3rd day of
     April, 2006.

24

A - 21

47

1  STATE OF ILLINOIS )
                     )   SS:
2  COUNTY OF C O O K )

3     IN THE CIRCUIT COURT OF COOK COUNTY
      COUNTY DEPARTMENT-CRIMINAL DIVISION
4
   THE PEOPLE OF THE     )
5  STATE OF ILLINOIS      )
                          )
6         VS.             )    No. 97 CR 09541-01
                          )
7  DANIEL COLEMAN         )

8         REPORT OF PROCEEDINGS had at the

9  hearing of the above-entitled cause, before

10 the Honorable LAWRENCE P. FOX, Judge of said

11 court on the 22n day of June, A.D. 2005.

12
      APPEARANCES:
13
      Honorable  RICHARD DEVINE,
14        State's Attorney of Cook County, by
   MR. JEFF ALLEN,
15        Assistant State's Attorney,
          for the People of the State of
16        Illinois;

17    Defendant pro se.

18

19

20

21

22 Yvonne J. Pulliam, CSR
   Official Court Reporter
23 2650 S. California  Avenue
   Chicago, Illinois 60608
24 CSR #84-000865.

```
1                        I   N   D   E   X
2                            Ruling to stand
3                            June 22, 2005
4                            Four pages
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
```

1          THE COURT: Daniel Coleman.

2          The order in this case is order of

3  6-13-05 to stand.  Written notice, clerk to

4  notify defendant by certified mail at

5  register number N as Nantucket, 660 post

6  office box 7-11, Menard, Illinois, 62259.

7               (Which were all the

8               proceedings had in the

9               above-entitled

10              matter.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1   STATE OF ILLINOIS )
                      )   SS:
2   COUNTY OF C O O K )

3

4      I, YVONNE J. PULLIAM, CSR, Official Court

5   Reporter for the Circuit Court of Cook

6   County, Illinois, Judicial Circuit of

7   Illinois, Criminal Division, do hereby

8   certify that I reported in shorthand the

9   proceedings had on the hearing in the

10  above-entitled cause; that I thereafter

11  caused the foregoing to be transcribed,

12  which I hereby certify to be a true and

13  accurate transcript of the proceedings had

14  before the Honorable LAWRENCE P. FOX, Judge

15  of said court.

16

17

18                            _____
                              Official Court Reporter
19                            CSR # 84-000865

20

21

22

23  Dated this 12th day

24  of June, 2006.

1    STATE OF ILLINOIS   )
                         )  SS:
2       COUNTY OF COOK   )

3       IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
             COUNTY DEPARTMENT - CRIMINAL DIVISION
4
     PEOPLE OF THE STATE OF ILLINOIS    )
5                                       )
                         Plaintiff,     )
6                                       )
                  vs                    )  No. 97 CR 9541-01
7                                       )
     DANIEL COLEMAN                     )     A P P E A L
8                                       )
                         Defendant.     )
9

10                 DEFENDANT'S POST CONVICTION PETITION

11

12                 REPORT OF PROCEEDINGS had at the hearing of the

13   above-entitled cause before the Honorable LAWRENCE P. FOX, one

14   of the judges of said court, on the 21st day of July, A.D.,

15   2005.

16

17                 PRESENT:   HON. RICHARD DEVINE
                              State's Attorney of Cook County
18                            by, MS. NANCY NAZARIAN
                              Assistant State's Attorney,
19                            on behalf of the People.

20

21                             -- -- --

22

23   Kathie Kerns, CSR, RPR
     Official Court Reporter
24   CSR #084-002547

1

2                          I N D E X

3

      WITNESS                                              PAGE

4

5

6

7

8                    *** PETITION DENIED ***

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1             THE COURT:  Daniel Coleman.  I have a motion for

2   petition for re-hearing on a habeas corpus of whatever he

3   entitled it which I ruled on petition for re-hearing denied.

4   Previous order is to stand.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1    STATE OF ILLINOIS    )

 2                         ) ss:

 3        COUNTY OF COOK   )

 4

 5            I, KATHERINE A. KERNS, CSR, RPR,

 6    Official Shorthand Reporter of the Circuit Court of Cook County,

 7    County Department - Criminal Division, do hereby certify that I

 8    reported in shorthand the evidence had in the above-entitled

 9    cause and that the foregoing is a true and correct transcript of

10    all the evidence heard.

11

12

13                        Official Shorthand Reporter

14                        Circuit Court of Cook County

15

16              On this 20th day of November, A.D., 2005.

17

18

19

20

21

22

23

24
```

56.

NOTICE

The text of this order may be changed or corrected prior to the time for filing of a Petition for rehearing or the disposition of the same.

RECEIVED

7   JUN 22  P 4:37

APPEALS DIVISION
COOK COUNTY
PUBLIC . . . FICE

No. 1-05-2681

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) ) | |
| v. | ) ) | No. 97 CR 9541 |
| DANIEL COLEMAN, | ) ) | Honorable Lawrence P. Fox, |
| Defendant-Appellant. | ) ) | Judge Presiding. |

O R D E R

Defendant Daniel Coleman appeals from the summary dismissal of his *pro se* petition for relief under the Post-Conviction Hearing Act (Act). 725 ILCS 5/122-1 *et seq.* (West 2004). Defendant contends that the trial court erred in summarily dismissing his petition because it stated the gist of a meritorious claim of ineffective assistance of trial counsel. We affirm.

Following a jury trial in 1999, defendant was convicted of first-degree murder. After determining that the crime was exceptionally brutal and heinous, the trial court sentenced defendant to natural life in prison. On direct appeal, we

1-05-2681

affirmed the judgment of the trial court.    People v. Coleman,
347 Ill. App. 3d 266 (2004).[1]

On March 15, 2005, defendant filed a pro se postconviction
petition.  Defendant's petition alleged, among other things, that
he was denied effective assistance of counsel when his trial
counsel failed to call an expert to testify to the effects of a
diabetic reaction as rebuttal evidence to defendant's confession;
that appellate counsel was ineffective for failing to raise
meritorious claims on direct appeal; that the indictment was
based on perjured testimony; that defendant was denied his right
to confront witnesses; and that his natural life sentence was
excessive in violation of Apprendi v. New Jersey, 530 U.S. 466,
147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000).  Although defendant
attached numerous documents to his petition, he failed to attach
any affidavits from a witness who could support his claim of a
diabetic reaction.

On April 30, 2005, defendant filed a petition for habeas
corpus relief alleging, among other things, that his natural life
sentence was unconstitutional.  On June 13, 2005, the trial court
summarily dismissed defendant's postconviction petition and

_____

[1] On December 3, 2003, the Illinois Supreme Court vacated
this court's initial opinion in People v. Coleman, 328 Ill. App.
3d 688 (2002) with directions to reconsider its ruling regarding
defendant's Apprendi contentions in light of certain specified
cases.  After consideration of those cases, this court issued its
opinion in People v. Coleman, 347 Ill. App. 3d 266 (2004),
affirming defendant's conviction and sentence.

57

1-05-2681

*habeas corpus* petition after finding that the claims in both were barred by the doctrines of *res judicata* or waiver, as well as frivolous and without merit. Defendant appeals the summary dismissal of his postconviction petition.

Defendant contends on appeal that his petition stated the gist of a meritorious constitutional claim that his counsel was ineffective for failing to call an expert to testify to the effects of a diabetic reaction to "rebut" evidence of his confession.

The summary dismissal of a postconviction petition is a legal question which we review de *novo*. People v. Lucas, 203 Ill. 2d 410, 418 (2002). In order to proceed past the first stage of a postconviction proceeding, the defendant's petition must "clearly set forth the respects in which petitioner's constitutional rights were violated" and must include supporting "affidavits, records, or other evidence" or explain their failure to do so. 725 ILCS 5/122-2 (West 2004); People v. Collins, 202 Ill. 2d 59, 66 (2002). A petition not supported by affidavits, records or other evidence is properly dismissed at the first stage unless the defendant's allegation is uncontradicted and supported by the record. People v. Smith, 352 Ill. App. 3d 1095, 1105 (2004). Furthermore, a postconviction petition is considered frivolous or patently without merit, and thus properly dismissed at the first stage, "if the allegations in the

- 3 -

1-05-2681

petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.' " <u>People v. Edwards</u>, 197 Ill. 2d 239, 244 (2001); quoting <u>People v. Gaultney</u>, 174 Ill. 2d 410, 418 (1996).

Defendant's allegation is simply too speculative to state the gist of a constitutional claim of ineffective assistance of counsel. As the State notes, defendant provided no details of this alleged diabetic reaction. His allegation did not provide any information as to the time, duration, or nature of the reaction. It did not describe any of the effects of this alleged diabetic reaction and provided no explanation of how it affected the voluntariness or reliability of his confession. Furthermore, defendant's petition failed to indicate that his attorney was even aware that defendant had such a reaction. Therefore, defendant's petition failed to state even the gist of a meritorious constitutional claim.

Moreover, the circuit court properly dismissed defendant's *pro se* postconviction petition because he failed to attach supporting documentation or an explanation for its absence, a fact which alone justified dismissal. See <u>Collins</u>, 202 Ill. 2d at 66.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

FITZGERALD SMITH, P.J., with JOSEPH GORDON and O'MALLEY, JJ., concurring.

- 4 -

59.

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
SIXTH DIVISION

THE PEOPLE OF THE STATE OF ILLINOIS,    )
                                        )
    Plaintiff-Appellee,                 )
                                        )
    v.                                  )    No.  1-05-2681
                                        )
DANIEL COLEMAN,                         )
                                        )
    Defendant-Appellant.                )

O R D E R

IT IS HEREBY ORDERED that Defendant-Appellant's Petition For Rehearing is Denied.

Presiding Justice James Fitzgerald Smith

Justice Joseph Gordon

Justice Denise O'Malley

**ORDER ENTERED**

JUL 1 9 2007

**APPELLATE COURT, FIRST DISTRICT**

60

1   and recognized and accepted qualitative and quantitative tests

2   that are recognized in the scientific community.  He found

3   under -- in the -- under the fingernail clippings minute

4   amounts -- he found very minute amounts of human blood but an

5   insufficient amount for further testing and he found no debris

6   consistent with human skin cells.

7            We would offer to stipulate that the chain of custody

8   was at all times properly kept and preserved on all of the above

9   mentioned items.

10           So stipulated?

11      MR. BUCHHOLZ:  So stipulated.

12      MS. PERNECKE:  We also offer again to stipulate with the

13   Defendant through his attorney that if Barbara Wilson, W I L S O

14   N, also of the Illinois State Police Crime Lab were called to

15   testify she also would be qualified as an expert by the Court and

16   would be qualified to render an expert opinion within a

17   reasonable degree of scientific certainty in the field of

18   forensic DNA analysis.

19           That DNA analyst Barbara Wilson did examine and test

20   evidence where she properly employed all the tests -- the tests

21   and procedures commonly recognized and accepted in the scientific

22   community for determining the origin of DNA profiles contained

23   within body fluids including blood and saliva.

24           That in doing so Barbara found -- excuse me.  Barbara

F-140

66.

1    Wilson examined the two cigarette butts that were recovered and

2    inventoried from the victim's apartment at 1038 West Rosemont.

3    Those were People's Exhibit 55.  She compared the DNA profile of

4    the person who deposited the saliva on both of those cigarette

5    butts.  She compared that to the DNA profiles of the victim,

6    Marchelle Coleman, and to the DNA profile of the Defendant,

7    Daniel Coleman.  And she found that the DNA profile from both

8    cigarette butts matches that of Daniel Coleman and would be

9    expected to occur in approximately one in 1.1 trillion black

10    Americans or one in 15 trillion white Americans.

11        Miss Wilson also compared the DNA profile of the person

12    whose blood is found on the 1997 Golden Time calendar, that's

13    People's Exhibit 56, the small claw hammer, People's Exhibit 50,

14    the large claw hammer, People's 49, and the coiled phone cord,

15    People's Exhibit 53.  She compared the blood on each of those

16    items again to the DNA profile from Marchelle Coleman and the DNA

17    profile from the Defendant, Daniel Coleman, and found that the

18    DNA profile from the blood on the calendar, both hammers and the

19    phone cord matches that of Marchelle Coleman and not Daniel

20    Coleman.

21        We'd also offer to stipulate that the chain of custody

22    on all of these items was properly kept and preserved at all

23    times.

24        So stipulated?

F-141

67.

1    MR. BUCHHOLZ:  So stipulated.

2    MS. PERNECKE:  Thank you.

3    MS. MARK:  Next stipulation reads as follows:  "Now comes the

4    People of the State of Illinois by and through their attorney,

5    State's Attorney, Richard Devine, through his assistants, Joan

6    Pernecke and Julie Mark, and the Defendant, Daniel Coleman, by

7    and through counsel, Charles Buchholz, hereby stipulate that

8    Barbara Wilkins, W I L K I N S, is employed by the Illinois State

9    Police Crime Lab as a forensic scientist since 1995.

10        That Barbara Wilkins is a forensic scientist and is

11   qualified as an expert based on her education, training, and

12   experience in the field of latent print development.

13        That Barbara Wilkins did examine the evidence as

14   indicated below properly employing tests and procedures commonly

15   recognized and accepted in the scientific community for

16   ascertaining the presence of fingerprints.

17        That in doing so Barbara Wilkins found no latent

18   fingerprint impressions suitable for comparison on People's

19   Exhibit Number 55, the Cool and Newport cigarette butts, People's

20   Exhibit 54, the Camel match book, People's Exhibit Number 50, the

21   small claw hammer, People's Exhibit 49, the large claw hammer,

22   People's 51, the wooden bowl with lid, People's Exhibit 52, the

23   metal sleeve, People's Exhibit Number 53, phone cord and three

24   pieces of braided cord, People's Exhibit 56, the Golden Times
                                F-142

1    1997 calendar, People's Exhibit 57, lamp with shade and light

2    bulb and People's Exhibit Number 58, the oscillating fan with

3    broken cord.

4         That on all of these exhibits that were no prints

5    suitable for comparison.   There were no latent prints with enough

6    unique characteristics to do a comparison for identification.

7         That Barbara Wilkins compared seven latent prints which

8    were lifted from the victim Marchelle Coleman's apartment, one

9    from the telephone receiver in the living room, one from the

10   outside of the front door, two prints from the broken mirror on

11   the bedroom floor, one print from the hall closet mirror and two

12   prints from the inside of the front door.

13        Barbara Wilkins properly employed tests and procedures

14   commonly recognized and accepted in the scientific community for

15   determining the origin of the latent prints.

16        That Barbara Wilkins compared the seven latent prints

17   from victim Marchelle Coleman's apartment to victim Marchelle

18   Coleman's fingerprint card and to the Defendant Daniel Coleman's

19   fingerprint cards.   That the comparison of the Defendant's

20   fingerprint cards to the lifted prints did not reveal an

21   identification.   That the comparison of the victim's fingerprint

22   cards to the lifted prints revealed that Marchelle Coleman left

23   the two prints on the inside of the front door of her apartment.

24   That the remaining five prints lifted from the victim's apartment

F-143

1    were not the victim's or the Defendant's.

2          That Barbara Wilkins would testify that a latent print

3    is left on a surface by the oil from a person's finger when a

4    person touches a surface.

5          Latent prints are not always left on a surface.  There

6    are many factors and circumstances which determine whether a

7    latent print is left on a surface.  The nature of the surface is

8    one factor.  If the surface is dirty or rough or corrugated, it

9    is less likely that a print will be left on that surface.

10   Whether a person's finger are sweaty or dry is another factor

11   which will determine whether a latent print is left on a surface.

12   If a person touches an object and then smears or smudges the

13   object touched, the latent prints will likewise be smeared or

14   smudged.

15         There are numerous environmental factors which also

16   contribute to whether a latent print is left on an object.  These

17   include the temperature and the humidity.

18         Additionally at the time from when the person touches

19   an object until when the latent print is lifted is another

20   factor.  The longer amount of time the less likely a latent print

21   will be left because as the oil from your skin which forms the

22   fingerprint evaporates the latent print evaporates.

23         A latent print will not be present if someone has worn

24   gloves or if this person has wiped the surface which they have

F-144

1  touched.

2      The chain of custody was at all times properly kept and
3  preserved on the above mentioned items."

4      So stipulated?

5  MR. BUCHHOLZ:  So stipulated, Judge.

6  THE COURT:  Okay.

7  MS. MARK:  The next stipulation reads as follows:  "Now comes
8  the People of the State of Illinois by and through their
9  attorney, State's Attorney, Richard Devine, through Joan" --
10  "Assistants Joan Pernecke and Julie Mark, and the Defendant,
11  Daniel Coleman, by and through counsel, Charles Buchholz, hereby
12  stipulate that if Robert Berk, B E R K, were called to testify he
13  would testify that he is employed as a forensic scientist by the
14  Illinois State Police Crime Lab and has been so employed since
15  1996.  He would also testify that he was employed as a forensic
16  scientist by the Chicago Police Crime Lab from 1987 until 1996.

17      That Robert Berk is a forensic scientist and is
18  qualified as an expert based on his education, training, and
19  experience in the field of optical and trace microscopy, M I C R
20  O S C O P Y.  That Robert Berk is presently qualified as an
21  expert in the field of optical and trace microscopy and has been
22  an expert since 1987.  That he has been qualified as an expert to
23  render his expert opinion in open court since 1987 until the
24  present.

F-145

1        That the science of optical and trace microscopy

2   involves analyzing trace materials.  Trace materials are anything

3   which may be transferred from one place to another.  Examples of

4   trace materials are hair fibers, carpet fibers, glass or paint.

5   The recovered trace materials are then compared with standards

6   from a known origin.  Robert Berk would compare the recovered

7   trace materials to the known standards.

8        That Robert Berk did examine the evidence and properly

9   employed tests and procedures commonly recognized and accepted in

10  the scientific community of optical and trace microscopy.

11       That Robert Berk received from the Chicago Police

12  Department People's Exhibit 60-A as a sample of ash from victim's

13  back and People's Exhibit 60-B, boy, a partially burned paper

14  towel from the floor of the bedroom which had previously been

15  inventoried under Chicago Police Department inventory number

16  1775006.  He also received People's Exhibit Number 49, a large

17  claw hammer, People's Exhibit Number 50, a small claw hammer,

18  People's Exhibit Number 51, a wooden bowl with lid, People's

19  Exhibit" -- "the metal sleeve, People's Exhibit Number 52, the

20  phone cord, and People's Exhibit Number 53, the braided leather

21  cord which were recovered from the bedroom and which were

22  inventoried under Chicago Police Department inventory 1775008.

23  People's Exhibit Number 53 was the phone cord and the leather

24  cord.  The wooden bowl with the lid was People's Exhibit 52.

                           F-146

                            7d.

1    Robert Berk also received People's Exhibit Number 54, a Camel

2    match book and People's Exhibit 55, Cool and Newport cigarette

3    butts recovered from the living room ashtray which were

4    inventoried under Chicago Police Department inventory number

5    1775009.  That Robert Berk also received People's Exhibit Number

6    56, a Golden Times 1997 calendar recovered from the hallway wall,

7    People's Exhibit Number 57, a broken lamp with shade and People's

8    Exhibit Number 58, an oscillating fan with a broken cord

9    recovered from the bed in the bedroom which were inventoried

10   under Chicago Police Department inventory number 1775010.  That

11   Robert Berk also recovered victim Marchelle Coleman's hair.  He

12   had standards which were plucked from her head, combings of hair

13   and any debris collected by combing through the pubic hair

14   standards, the brown bags from the victim Marchelle Coleman's

15   hands.  Brown bags had been pulled over the victim's hands after

16   she was fingerprinted at the morgue, Daniel" -- "Defendant Daniel

17   Coleman's head hair standards and Defendant Daniel Coleman's

18   pubic hair standards.

19          That Robert Berk examined and analyzed and compared

20   People's Exhibit 49 through 60-A and B, all the exhibits which I

21   just mentioned, with the standards from the known or against from

22   the victim and Defendant.  That as a result of Robert Berk's

23   examination, analysis and comparison he could render his expert

24   opinion in open court.  His opinion is within a reasonable degree

F-147

73.

1   of scientific certainty.

2          That Robert Berk's expert opinion that" -- "opinion

3   that People's Exhibit 60-A, the ash from the victim's back is

4   microscopically consistent with the charred portions of People's

5   Exhibit 60-B, partially burned paper towel from the floor of the

6   bedroom indicating a possible source of origin.

7          People's Exhibit 49, the large claw hammer, People's

8   Number 50, the small claw hammer, People's 51, the wooden bowl

9   with lid, People's 52, the metal sleeve, People's Number 53, the

10  phone cord and the braided leather cord, and People's Exhibit

11  Number 58, the oscillating fan with broken cord and the brown

12  bags from the victim's hands all contained Negroid head hairs.

13  These hairs are microscopically consistent with the victim's

14  plucked head hairs and dissimilar to the Defendant's head hair

15  standards.  Thus these hairs could have originated from Marchelle

16  Coleman and did not originate from Daniel Coleman.

17         That one pubic hair was recovered from People's Exhibit

18  Number 58, the oscillating fan with the broken cord.  This pubic

19  hair is microscopically consistent with the victim Marchelle

20  Coleman's pubic hair and is dissimilar to the Defendant's pubic

21  hair, thus this pubic hair could have originated from the victim

22  and could not have originated from the Defendant.

23         Tobacco and ash were observed in People's Exhibit

24  Number 55, the Cool and Newport cigarette butts from the living

F-148

74.

1    room ashtray.  No trace materials were recovered from People's

2    Exhibit 54, the Camel match book and People's Exhibit Number 56,

3    the Golden Times, 1997 calendar.

4         Heat damage was observed to the victim's pubic hair

5    standards.  Some of the recovered hairs were not suitable for

6    comparison.  They were not suitable for comparison because

7    chemical or physical damage to the hair or because the physical

8    sample size of the hair was too small for comparison.  A hair

9    standard of less than an eighth of an inch is unsuitable for

10   comparison.

11        That the chain of custody was at all times properly

12   kept on all of the above mentioned evidence."

13        So stipulated?

14   MR. BUCHHOLZ:  So stipulate.

15   THE COURT:  State have anything further?

16   MS. PERNECKE:  Not today, Judge.

17   THE COURT:  Okay.  Fine.  Folks, we're going to recess for

18   the day.  It looks like we probably won't go as late tomorrow as

19   we've gone today and we will get the case to you as early on

20   Thursday as we possibly can for your deliberation.  So that's

21   about all I can tell you today.  I would hope to be out of here

22   before 4:00 o'clock tomorrow so that's my plan and I would hope

23   to argue the case as early as possible on Thursday and get it to

24   you for your deliberation.  So keep that in mind in making your

1   plans.

2         And remember my admonition, don't discuss the case

3   among yourselves or with anyone else or allow anyone to discuss

4   it in your presence.  Keep an open mind until you've heard all

5   the evidence, the arguments of counsel and the instructions from

6   the Court.

7         And have a nice evening.  We will see you back here

8   tomorrow morning at 10:00 o'clock instead of 10:30 and I promise

9   we will start earlier than we did today.  Thank you very much.

10                (Which were all the proceedings had)

11

12

13

14

15

16

17

18

19

20

21

22

23

24
                          F-150


                          76.

IN THE UNITED STATES DISTRICT COURT
FOR THE _Northern_____ DISTRICT OF ILLINOIS

_Daniel Coleman_____
                                  Plaintiff,          )
                                                      )
                                                      )
                                                      )
v.                                                    )    No. _97 CR 9541_
                                                      )
_Donald A. Hulick, Warden_____                      )
                                                      )    The Honorable
_____                             )    _Lawrence Fox___,
                                                      )
_____                             )    Judge Presiding.
                                  Defendants.          )

## NOTICE OF FILING

TO: _The Clerk  of The United States_
_District Court, Prisoner Correspondent_
_219 South Dearborn Street Chicago Ill. 60604_

PLEASE TAKE NOTICE that on or before the _28th_ day of
_January_____, _2008_, I shall file with the Clerk
of the U.S. District Court For The _Northern_____ District
of Illinois, the attached Plaintiff's _Habeas Corpus petition_
_(1) original and two copies and 5⁰⁰ filing fee, and complete application_
_of poor person_
a copy of which is hereby served upon you.

                          By: _Daniel Coleman_____
                              Register Number _N84660_
                              Post Office Box 711,
                              Menard, Illinois  62259

## CERTIFICATE OF SERVICE

    I, _Daniel Coleman_____, being duly sworn aver
that I have served copies of the foregoing to the person named above
by placing such copies in the U.S. Mailbox at the Menard Correctional
Center on the _____ day of _____; postage
prepaid. UNDER THE PENALTY OF PERJURY THE FOREGOING IS TRUE AND
CORRECT.
                          _Daniel Coleman_____
                          Affiant.

_I._